**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

**LIQUOR LIABILITY COVERAGE PART**

**SCHEDULE**

**Location**

| Coverage | Amount and Basis of Deductible |
| --- | --- |
| | PER CLAIM or   PER COMMON CAUSE |
| Liquor Liability | $ 1,000        $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for "injury", however caused):

**A.** Our obligation under the Liquor Liability Coverage to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated in the Schedule above.

**B.** You may select a deductible amount on either a per claim or a per common cause basis. Your selected deductible applies to the Liquor Liability Coverage and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.**  If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies under Liquor Liability Coverage, to all "injuries" sustained by any one person or organization.

**2. PER COMMON CAUSE BASIS.**  If the deductible amount indicated in the Schedule above is on a per common cause basis, that deductible amount applies under Liquor Liability Coverage to all damages because of "injury" as the result of the selling, serving or furnishing of any alcoholic beverage to any one person, regardless of the number of persons or organizations who sustain damages.

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suit" seeking those damages; and

**2.** Your duties in the event of an "injury", claim or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claims or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**RAILROAD PROTECTIVE LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORMS**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**Exclusions**

**2.a.** is deleted and replaced by the following:

**2.   Exclusions**

This insurance does not apply to:

**a.   Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

**GA 325 PA 10 95**

# THE CINCINNATI CASUALTY COMPANY
**A Stock Insurance Company**

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE
# FORM DECLARATIONS

**NOTICE: INSURANCE COVERAGE UNDER ANY PARTICULAR COVERAGE INCLUDED WITHIN THIS FORM IS NOT IN FORCE UNLESS THE CORRESPONDING SECTION OF THESE DECLARATIONS HAS BEEN COMPLETED.**

Attached to and forming a part of POLICY NUMBER: ECP 049 60 04
Named Insured is the same as it appears in the Common Policy Declarations
**COVERAGE PROVISIONS** (Only those items marked by an ☒, where so indicated, are applicable):

**Limits of Insurance:**

|  |  |
|---|---|
|  | **Limit of Insurance:** ☐ Blanket: |
| ☒ **Coverage A - Electronic Data Processing Property:** ........................................ $ |  |
|  | ☒ See Scheduled Premises Endorsement |

☒ **Coverage A - Coverage Extensions:**

**Limit of Insurance - Unless Otherwise Stated:**

| | | |
|---|---|---|
| a. **Debris Removal:** ........................................... $50,000 | - | $ |
| b. **Duplicate and Backup Electronic Media and Records:** ...................................................... $10,000 | - | $ 25,000 |
| c. **Off Premises:** 20% of the Coverage **A** Limit of Insurance subject to a maximum of: $50,000 | | $ |
| d. **Pollutant Clean Up and Removal** ................................. $10,000 | - | $ |
| e. **Recharge or Refill of a Fire Protection Device:** ...................................................... $50,000 | - | $ |
| f. **Third Party Host:** ........................................... $10,000 | - | $ |

|  |  |
|---|---|
|  | **Limit of Insurance:** ☐ Blanket: |
| ☒ **Coverage B - Business Income and Extra Expense:** ............................................ $ |  |
|  | ☒ See Scheduled Premises Endorsement |

☒ **Coverage C - Additional Coverages:**

**Limit of Insurance - Unless Otherwise Stated:**

| | | |
|---|---|---|
| 1. **Denial of Service** ................................................ $ 10,000 | - | $ |
| 2. **Loss Establishment Expenses** ..................................... $ 5,000 | - | $ |
| 3. **Malicious Code** ................................................... $ 10,000 | - | $ |
| 4. **Unauthorized Use** ................................................ $ 10,000 | - | $ |

**Note:** The maximum aggregate Limit of Insurance for any Additional Coverage in any one "coverage term" is three times the Limit of Insurance stated here.

**Deductibles:**

**Deductible:**

| | |
|---|---|
| **Coverage A:** | |
|    **Basic:** ............................................................. $ | 500 |
|    **Specified Losses:** ................................................ $ | 1,000 |
| **Coverage B:** | (Hours) 24 |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO ELECTRONIC DATA PROCESSING COVERAGE FORM:**

| | | |
|---|---|---|
| MA123 | 08/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS |
| MA4050 | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |
| CM9904 | 07/88 | TENTATIVE RATE |
| MA135 | 11/99 | COMMERCIAL INLAND MARINE CONDITIONS |
| MA4015 | 06/07 | SCHEDULED PREMISES ENDORSEMENT |

**LOSS PAYEE (if any)**

**SPECIAL PROVISIONS (if any)**

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS

**Coverage Part Provision:**                                             **Begins on Page:**

Preamble ...............................................................................................................................3

**Section I - Coverages:** .........................................................................................................3

    **Coverage A - Electronic Data Processing Property:** ...............................................3

        1.   Insuring Agreement.................................................................................................3
        2.   Covered Property ...................................................................................................3
        3.   Property Not Covered .............................................................................................3
        4.   Covered Causes of Loss ........................................................................................3
        5.   Coverage Extensions:.............................................................................................3
            a.   Debris Removal ............................................................................................3
            b.   Duplicate and Backup Electronic Media and Records ...................................4
            c.   Off Premises .................................................................................................4
            d.   Pollutant Clean Up and Removal...................................................................4
            e.   Preservation of Property................................................................................4
            f.   Recharge or Refill of a Fire Protection Device ..............................................5
            g.   Third Party Host .............................................................................................5
            h.   Newly Acquired Property................................................................................5

    **Coverage B - Business Income and Extra Expense:** ...............................................5

        1.   Insuring Agreement.................................................................................................5
        2.   Covered Property ...................................................................................................5
        3.   Property Not Covered .............................................................................................5
        4.   Covered Causes of Loss ........................................................................................5
        5.   Additional Coverage:..............................................................................................5
            Extended Business Income ....................................................................................5

    **Coverage C - Additional Coverages:**.......................................................................5

        1.   Denial of Service ....................................................................................................6
        2.   Loss Establishment Expenses ...............................................................................6
        3.   Malicious Code.......................................................................................................6
        4.   Unauthorized Use...................................................................................................6

**Section II - Exclusions** ........................................................................................................6

**Section III - Limits of Insurance and Deductibles:** ..............................................................8

1.   Limits of Insurance: ........................................................................................................8
2.   Deductibles: ...................................................................................................................8
        a.   Coverage **A**.........................................................................................................8
        b.   Coverage **B**.........................................................................................................8
        c.   Coverage **C**.........................................................................................................8

**Section IV - Additional Conditions:** ......................................................................................8

1.   Coverage **A** - Electronic Data Processing Property - Conditions:....................................8
    Valuation .........................................................................................................................9
2.   Coverage **B** - Business Income and Extra Expense - Conditions: ...................................9
        a.   Appraisal......................................................................................................9
        b.   Loss Determination .......................................................................................9
        c.   Resumption of Operations ...........................................................................10
3.   Common Conditions:......................................................................................................10
        a.   Duties in the Event of Loss ..........................................................................10
        b.   Blanket Insurance .......................................................................................11
        c.   Joint Insured ...............................................................................................11
        d.   Legal Action Against Us...............................................................................11

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS

|    | | |
|----|---------------------------------------------------|----|
| e. | Loss Payee | 11 |
| f. | Multi-Year Policies | 11 |
| g. | Non-Accumulation of Limits of Insurance | 12 |
| h. | Other Insurance | 12 |
| i. | Protective Safeguards | 12 |
| j. | Recoveries | 12 |
| k. | Transfer of Your Rights of Recovery Against Others to Us | 12 |

**Section V - Definitions:** ............................................................................ 12

| 1. | "Actual cash value" | 12 |
|-----|---------------------------------------------|----|
| 2. | "Business income" | 13 |
| 3. | "Computer system" | 13 |
| 4. | "Coverage term" | 13 |
| 5. | "Coverage territory" | 13 |
| 6. | "Denial of service" | 13 |
| 7. | "Electronic media and records" | 13 |
| 8. | "Electronic securities" | 13 |
| 9. | "Evidences of debt" | 13 |
| 10. | "Extra expense" | 13 |
| 11. | "Hardware" | 13 |
| 12. | "Loss" | 13 |
| 13. | "Loss establishment expenses" | 14 |
| 14. | "Malicious code" | 14 |
| 15. | "Mechanical breakdown" | 14 |
| 16. | "Money" | 14 |
| 17. | "Occurrence" | 14 |
| 18. | "Operations" | 14 |
| 19. | "Other property" | 14 |
| 20. | "Period of restoration" | 14 |
| 21. | "Pollutants" | 14 |
| 22. | "Premises" | 14 |
| 23. | "Production equipment" | 14 |
| 24. | "Securities" | 14 |
| 25. | "Service agreement" | 14 |
| 26. | "Specified causes of loss" | 14 |
| 27. | "Sudden and accidental" | 15 |
| 28. | "Suspension" | 15 |
| 29. | "Telecommunications equipment" | 15 |
| 30. | "Temporarily" | 15 |
| 31. | "Unauthorized use" | 15 |
| 32. | "Valuable papers and records" | 15 |

**MA 123 08 07**

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

**Page 2 of 15**

# ELECTRONIC DATA PROCESSING EQUIPMENT
# COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section V - Definitions.**

### Section I - Coverages

**Coverage A - Electronic Data Processing Property**

1. **Insuring Agreement**

   We will pay for "loss" to Covered Property resulting from a Covered Cause of Loss.

2. **Covered Property**

   Covered Property, as used in Coverage **A** of this Coverage Part, means the following type of property:

   a. Your "hardware";

   b. Climate control equipment, and other electrical equipment, used exclusively with your "hardware";

   c. Your "electronic media and records";

   d. Your "telecommunications equipment";

   e. Your programming documentation and instruction manuals; and

   f. Similar property of others in your care, custody or control,

   While located:

   a. On your "premises" or within one thousand (1,000) feet thereof (except as may be provided in the **Section I - Coverages, Coverage A - Electronic Data Processing Property, 5. Coverage Extensions**); and

   b. In the "coverage territory" (except as may be provided in the **Section I - Coverages, Coverage A - Electronic Data Processing Property, 5. Coverage Extensions**).

3. **Property Not Covered**

   Covered Property does not include:

   a. "Electronic media and records" that cannot be replaced with similar property of like kind and quality.

   b. Property that you have rented or leased to another person or organization and is not at your "premises".

   c. Contraband or property in the course of illegal transit or trade.

   d. "Production equipment".

   e. Copyrights, patents, trademarks, trade secrets or other intellectual property.

   f. Personally identifiable information of persons or entities other than you or your employees.

   g. Property held as samples or for sale.

   h. Records of accounts receivable.

   i. Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

   j. "Electronic securities", "evidences of debt", "money" and "securities".

   k. "Valuable papers and records".

4. **Covered Causes of Loss**

   Covered Causes of Loss, with respect to Coverage **A**, means risks of direct "loss" to Covered Property except those causes of "loss" listed in **Section II - Exclusions**.

5. **Coverage Extensions**

   Unless stated otherwise, the Limits of Insurance referenced in the following Coverage Extensions are in addition to, and not included within, **Section III - Limits of Insurance and Deductibles, 1. Limits of Insurance** for Coverage **A**.

   a. **Debris Removal**

      (1) We will pay your expense to remove the debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within one hundred-eighty (180) days of the date of direct "loss".

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

**(2)** The most we will pay- under this Coverage Extension is twenty-five (25) percent (%) of:

    **(a)** The amount we pay for the direct "loss" to Covered Property; plus

    **(b)** The deductible in this Coverage Part applicable to that "loss".

This Coverage Extension is included within the Limit of Insurance shown in the Declarations for Coverage **A**. However, if:

    **(a)** The sum of direct "loss" and debris removal expense exceeds the Limit of Insurance for Coverage **A**; or

    **(b)** The debris removal expense exceeds the amount payable under the twenty-five (25) percent (%) limitation in this Coverage Extension;

    we will pay up to the additional Limit of Insurance for Debris Removal stated in the Declarations for each "premises" in any one "occurrence".

**(3)** This Coverage Extension does not apply to costs to:

    **(a)** Extract "pollutants" from land or water; or

    **(b)** Remove, restore or replace polluted land or water.

**b. Duplicate and Backup Electronic Media and Records**

We will pay up to the Limit of Insurance for Duplicate and Backup Electronic Media and Records stated in the Declarations in any one "occurrence" for "loss" to "electronic media and records" due to a Covered Cause of Loss while such property is stored away from your "premises" other than "temporarily".

This Coverage Extension does not apply to "loss" insured under the Third Party Host Coverage Extension.

**c. Off Premises**

We will pay up to the Limit of Insurance for Off Premises stated in the Declarations in any one "occurrence" for "loss" to Covered Property due to a Covered Cause of Loss while such property is away from your "premises":

**(1)** "Temporarily" in transit;

**(2)** "Temporarily" in storage; or

**(3)** In the custody of your employee for the purpose of conducting your business.

This is not an additional Limit of Insurance. It is included within the Coverage **A** Limit of Insurance.

This Coverage Extension applies to Covered Property whether or not it is located within the "coverage territory".

If the Limit of Insurance stated in the Declarations is other than the $50,000 maximum stated, then the Limit of Insurance that applies to all "loss" in any one "occurrence" is the greater of the limit stated or the twenty percent (20%) of the Coverage **A** Limit of Insurance limitation.

**d. Pollutant Clean Up and Removal**

**(1)** We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants":

    **(a)** Is from Covered Property;

    **(b)** Is caused by a Covered Cause of Loss; and

    **(c)** Occurs during the policy period.

    The expenses will be paid only if they are reported to us in writing within one hundred eighty (180) days of the date on which the Covered Cause of Loss occurs.

**(2)** This Coverage Extension does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

**(3)** The most we will pay under this Coverage Extension for each "premises" for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term" is the Limit of Insurance stated in the Declarations for Pollutant Clean Up and Removal.

**e. Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

**(1)** While it is being moved or while "temporarily" stored at a location other than a "premises"; and

**(2)** Only if the "loss" occurs within thirty (30) days after the property is first moved.

This Coverage Extension is included within the Limit of Insurance shown in the Declarations for Coverage **A**.

**f. Recharge or Refill of a Fire Protection Device**

We will pay for your expense to recharge or refill any fire protective devices that are designed specifically to protect Covered Property when these devices have been discharged in a "loss" insured by Coverage **A** of this Coverage Part or have been accidentally discharged. The most we will pay in any one "loss" or "sudden and accidental" discharge is the Limit of Insurance for Recharge or Refill of a Fire Protection Device stated in the Declarations.

**g. Third Party Host**

We will pay up to the Limit of Insurance for Third Party Host stated in the Declarations in any one "occurrence" for "loss" to:

Your "electronic media and records" away from your "premises" due to a Covered Cause of Loss, but only while such "electronic media and records" are hosted in the "hardware" of a third party information technology provider, with whom you have directly contracted for such service.

This is not an additional Limit of Insurance. It is included within the Coverage **A** Limit of Insurance.

This Coverage Extension:

**(1)** Applies to "electronic media and records" whether or not they are located within the "coverage territory"; and

**(2)** Does not apply to "loss" insured under the Duplicate and Backup Electronic Media and Records Coverage Extension.

**h. Newly Acquired Property**

We will provide coverage as follows:

**(1)** On newly acquired Covered Property up to the total limit shown on the Declarations Page for Total Covered Property whether located at a current location or newly acquired location, but in no event shall we pay more than $250,000 under this Coverage Extension for any one "loss".

You will report such newly acquired property, or Covered Property already insured by this policy which is moved to a newly acquired location, to us within 90 days from the date the Covered Property is acquired or moved, as the case may be, and pay any additional premium due. If you do not report such property or movement of property, coverage will cease automatically after the 90 days has elapsed. However, in no event shall coverage be extended beyond the expiration of this policy.

**Coverage B - Business Income and Extra Expense**

**1. Insuring Agreement**

We will pay your actual loss of "business income" as well as "extra expense" that results from the necessary "suspension" of your "operations" during the "period of restoration" due to "loss" to Covered Property resulting from a Covered Cause of Loss.

**2. Covered Property**

Covered Property, as used in Coverage **B** of this Coverage Part, is the same as that applicable to Coverage **A**.

**3. Property Not Covered**

Covered Property does not include Property Not Covered under Coverage **A**.

**4. Covered Causes of Loss**

Covered Causes of Loss, with respect to Coverage **B**, means risks of direct "loss" to Covered Property except those causes of "loss" listed in **Section II - Exclusions**.

**5. Additional Coverage**

This Additional Coverage does not provide additional Limits of Insurance.

**Extended Business Income**

If the necessary "suspension" of your "operations" produces a "business income" loss payable under this Coverage Part, we will pay for the actual loss of "business income" you incur during the period that:

**a.** Begins on the date Covered Property is actually repaired, rebuilt or replaced and "operations" are resumed; and

**b.** Ends on the earlier of:

**(1)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "business income" that would have existed if no direct "loss" to Covered Property due to a Covered Cause of Loss had occurred; or

**(2)** Sixty (60) consecutive days after the date determined in **5.a.** above.

However, Extended Business Income does not apply to loss of "business income" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where your "premises" are located.

## Coverage C - Additional Coverages

The Limits of Insurance provided in the following Additional Coverages are included within and are not in addition to the Limits of Insurance applicable to Coverages **A** or **B**, unless stated otherwise therein.

**1. Denial of Service**

We will pay up to the Limit of Insurance stated in the Declarations for Denial of Service for loss of "business income" or "extra expense" under Coverage **B** caused by a "denial of service".

**2. Loss Establishment Expenses**

Subsequent to the detection of a potential "loss" insured under Coverage **A** or **B**, we will pay up to the Limit of Insurance stated in the Declarations for "loss establishment expenses" incurred within ninety (90) days of the detection of the "loss" or potential "loss".

This Limit of Insurance is in addition to the Limits of Insurance for Coverages **A** and **B**.

**3. Malicious Code**

We will pay up to the Limit of Insurance stated in the Declarations for Malicious Code for all "loss", loss of "business income" or "extra expense" under Coverages **A** and **B** arising from the introduction of a "malicious code" to your "electronic media and records" or "hardware" by any person or organization other than:

**(1)** You;

**(2)** Your partners;

**(3)** Your directors;

**(4)** Your officers;

**(5)** Your trustees;

**(6)** Your members, if you are a limited liability company; or

**(7)** A person or organization, other than your employees, to whom you have entrusted Covered Property.

**4. Unauthorized Use**

We will pay up to the Limit of Insurance stated in the Declarations for Unauthorized Use for all "loss", loss of "business income" or "extra expense" under Coverages **A** and **B** arising from "unauthorized use" by any person or organization other than:

**(1)** You;

**(2)** Your partners;

**(3)** Your directors;

**(4)** Your officers;

**(5)** Your trustees;

**(6)** Your members, if you are a limited liability company; or

**(7)** A person or organization, other than your employees, to whom you have entrusted Covered Property.

## Section II - Exclusions

**Coverage A - Electronic Data Processing Property and Coverage B - Business Income and Extra Expense - Exclusions**

The following exclusions apply to Coverages **A** and **B**, unless stated otherwise herein:

**1.** We will not pay for a "loss", loss of "business income" or "extra expense" caused directly or indirectly by any of the following. Such "loss", loss of "business income" or "extra expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss", loss of "business income" or "extra expense":

**a. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Part.

**b. Nuclear Hazard**

**(1)** Any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination from any other cause.

**c. Satellite Communications**

The disruption or failure of any satellite communication system, or any part thereof.

**d. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**e. Utility Interruption**

The intentional suspension of any utility service by you or the utility provider.

**f. Tidal Wave or Tsunami**

Tidal wave or tsunami, even if attributable to an earthquake or volcanic eruption.

**2.** We will not pay for "loss", loss of "business income" or "extra expense" caused by or resulting from any of the following:

**a.** Delay or loss of market, except as may be provided under Coverage **B**.

**b.** Dishonest or criminal acts by you, any of your partners, directors, trustees, officers, members or managers (if you are a limited liability company) or anyone entrusted with the property, except employees, whether or not acting alone or in collusion with others or whether or not occurring during the hours of employment. But this exclusion does not apply to a carrier for hire.

**c.** Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

**d.** Interruption, disruption, or slow down in normal network service or function due to activity on the network or network server.

This exclusion does not apply to "denial of service".

**e.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**f.** Unauthorized instructions to transfer property to any person or to any place.

**g.** Bookkeeping, accounting or billing errors or omissions.

**h.** Any processing or work upon Covered Property. But if "loss" by fire results, we will pay for that resulting "loss", loss of "business income" or "extra expense".

**i.** "Denial of service", "malicious code" or "unauthorized use".

However, this exclusion shall not apply to the extent that insurance coverage is provided under **Section I - Coverages, Coverage C - Additional Coverages.**

**3.** We will not pay for a "loss", loss of "business income" or "extra expense" caused by or resulting from any of the following. But if "loss", loss of "business income" or "extra expense" caused by a Covered Cause of Loss results, we will pay for that resulting "loss", loss of "business income" or "extra expense":

**a.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**b.** Wear and tear, hidden or latent defect, gradual deterioration, or depreciation.

**c.** The failure of "hardware" or "electronic media and records" to function as designed or anticipated to function by you or any other person or organization providing, designing or recommending said "hardware" or "electronic media and records" to you.

However, this exclusion will not apply if the failure of "hardware" or "electronic media and records" to function is caused by:

**(1)** A Covered Cause of Loss emanating from a source external to the "hardware" or "electronic media and records"; or

**(2)** The "sudden and accidental" "mechanical breakdown" of "hardware".

4. Insurance provided by Coverages **A** and **B** does not apply to:

   a. Payment of costs, fees, or other expenses you incur in establishing either the existence or the amount of "loss", loss of "business income" or "extra expense", except as provided for under **Section I - Coverages, Coverage C - Additional Coverages, 2. Loss Establishment Expenses.**

   b. "Loss", loss of "business income" or "extra expense", or any part thereof, the proof of which as to its existence or amount is dependent solely upon:

      (1) An inventory computation;

      (2) A profit and loss computation; or

      (3) An audit of records.

5. Insurance provided by Coverage **A** does not apply to loss of "business income" or "extra expense".

## Section III - Limits of Insurance and Deductibles

1. **Limits of Insurance**

   a. The most we will pay for any one "occurrence" is the applicable Limits of Insurance for Coverages **A** and **B** and **Coverage C - Additional Coverages, 2. Loss Establishment Expenses** stated in the Declarations or any endorsement amendatory thereof.

   b. With respect to **Section I - Coverages, Coverage C - Additional Coverages:**

      (1) Under **Coverage C - Additional Coverages, 2. Loss Establishment Expenses,** we will not pay more than the lesser of:

         (a) The Limit of Insurance stated in the Declarations for Loss Establishment Expenses; or

         (b) The actual cost of the "loss" insured under Coverages **A** or **B** in "Loss establishment expenses".

      (2) In the event that a single "occurrence" involves one or more of the following:

         (a) "Denial of service";

         (b) "Malicious code"; or

         (c) "Unauthorized use",

         the most we will pay in total is the single highest Limit of Insurance ap-

plicable to the Additional Coverages applicable to the "loss".

      (3) The most we will pay for all "loss" in any "coverage term" for each Additional Coverage is three times the Limit of Insurance stated for each in the Declarations.

2. **Deductibles**

   a. **Coverage A**

      We will not pay for "loss" in any one "occurrence" until the amount of the adjusted "loss" before applying the applicable Limits of Insurance exceeds the Deductible shown in the Deductible section of the Declarations for Coverage **A**. We will then pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

      (1) The Basic Deductible shown on the Declarations applies to "loss" from all Covered Causes of Loss except those referenced in **(2)** below.

      (2) The Specified Losses Deductible shown on the Declarations applies to "loss" caused by "sudden and accidental" "mechanical breakdown" or artificially generated electrical disturbance.

   b. **Coverage B**

      We will not pay your actual loss of "business income" or "extra expense" arising from any one "loss" until and unless the necessary "suspension" of your "operations" has exceeded the Deductible in hours stated in the Declarations for Coverage **B**. We will then pay the amount of your actual loss of "business income" or "extra expense" in excess of the Deductible, up to the Limit of Insurance.

   c. **Coverage C**

      We will not pay for "loss", loss of "business income", "extra expenses" or "loss establishment expenses" under **Section I - Coverages, Coverage C - Additional Coverages** unless and until an insured "loss", loss of "business income" or "extra expenses" under Coverage **A** or **B** exceeds their deductible.

## Section IV - Additional Conditions

The following Conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

1. **Coverage A - Electronic Data Processing Property - Conditions**

The following Condition applies to Coverage **A** only:

**Valuation**

In the **COMMERCIAL INLAND MARINE CONDITIONS, GENERAL CONDITIONS, F. Valuation** is replaced by the following with respect to Covered Property under Coverage **A**:

**a.** Valuation of Covered Property under Coverage **A**, other than that described in Paragraph **b.** below:

If you repair or replace this property with due diligence following "loss", the property will be valued at the full cost of repair or replacement. However, the most we will pay is the least of the following:

  **(1)** The cost of replacing that property with property of similar or greater quality and function, provided the cost is no greater than the original purchase price of the property plus twenty (20) percent (%);

  **(2)** The amount you actually and necessarily spend to repair or replace the property; or

  **(3)** The Limit of Insurance applicable to the property.

If you do not repair or replace this property with due diligence following "loss", the most we will pay will be the least of the following:

  **(a)** The "actual cash value" of the property;

  **(b)** The "actual cash value" of repairs with material of like kind and quality; or

  **(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in "money".

In the event of "loss", the value of property will be determined as of the date of "loss".

**b.** Valuation of "electronic media and records":

  **(1)** We will not pay for more than the actual reproduction costs of covered "electronic media and records".

  **(2)** But we will not pay the cost to duplicate research or operations that were developed away from your "premises" that led to the develop-

ment of your "electronic media and records" or that led to the development of any proprietary or confidential information or intellectual property.

  **(3)** If you do not replace or reproduce the "electronic media and records", the most we will pay is the cost of blank "electronic media and records".

The most we will pay is the Limit of Insurance shown on the Declarations.

**2.** **Coverage B - Business Income and Extra Expense - Conditions**

The following Conditions apply to Coverage **B** only:

**a.** **Appraisal**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, B. Appraisal** is replaced by the following:

If you and we disagree on the amount of Net Income and operating expense or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that a judge of a court having jurisdiction make selection. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each will:

  **(1)** Pay its chosen appraiser; and

  **(2)** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**b.** **Loss Determination**

  **(1)** The amount of "business income" loss will be determined based on:

    **(a)** The Net Income of the business before the Covered Cause of Loss occurred;

    **(b)** The likely Net Income of the business if no Covered Cause of Loss had occurred, but not including any Net Income that likely would have resulted from an increase in the volume of

business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the Covered Cause of Loss; and

**(d)** Other relevant sources of information, including:

    **1)** Your financial records and accounting procedures;

    **2)** Bills, invoices and other vouchers; and

    **3)** Deeds, liens or contracts.

**(2)** The amount of "extra expense" will be determined based on:

**(a)** All necessary and reasonable expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no Covered Cause of Loss had occurred. We will deduct from the total of such expenses:

    **1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

    **2)** Any "extra expense" that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** All necessary and reasonable expenses that reduce the "business income" loss that otherwise would have been incurred.

**c. Resumption of Operations**

**(1)** We will reduce the amount of your:

**(a)** "Business income" loss other than "extra expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "premises" or elsewhere.

**(b)** "Extra expense" loss to the extent you can return "operations" to normal and discontinue such "extra expense".

**(2)** If you do not resume "operations" or do not resume "operations" as quickly as possible, we will pay based on the length of time it should have taken with due diligence to resume operations as quickly as possible.

**3. Common Conditions**

The following Conditions apply to all Coverages provided under this Coverage Part:

**a. Duties in the Event of Loss**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, C. Duties in the Event of Loss** is replaced by the following:

**(1)** In the event of:

**(a)** "Loss" to Covered Property; or

**(b)** Loss of, or loss from damage to Covered Property, or a situation that may result in loss of, or loss from damage to Covered Property,

You must see that the following are done:

    **1)** Notify the police if a law may have been broken.

    **2)** Notify us as soon as possible. Include a description of any property involved.

    **3)** As soon as possible, give us a description of how, when and where the loss occurred.

    **4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside in the best possible order for examination.

**5)** As often as may be reasonably required, permit us to:

  **a)** Inspect the property proving the loss;

  **b)** Examine your books, records, "electronic media and records" and "hardware";

  **c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

  **d)** Make copies from your books, records, "electronic media and records" and "hardware".

**6)** Send us signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**7)** Cooperate with us in the investigation or settlement of the claim.

**8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**9)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**10)** Promptly send us any legal papers or notices received concerning the loss.

**(2)** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**b. Blanket Insurance**

If blanket insurance is indicated (☒) in the Declarations, the Limit of Insurance for that Coverage applies to all "premises" within the "coverage territory".

**c. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered under this policy, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured or partner, officer, or member or manager (applicable to limited liability companies) of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An employee of any Insured is considered to be an employee of every Insured.

**(4)** If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**d. Legal Action Against Us**

In the **COMMERCIAL INLAND MARINE CONDITIONS, GENERAL CONDITIONS, B. Legal Action Against Us** is replaced by the following:

No one may bring legal action against us under this Coverage Part unless:

**(1)** There has been full compliance with all the terms of this Coverage Part;

**(2)** At least ninety (90) days has passed since you filed proof of loss with us; and

**(3)** Brought within two (2) years from the date you discover the loss in question.

**e. Loss Payee**

For Covered Property in which both you and a Loss Payee listed in the Declarations have an insurable interest, we will:

**(1)** Adjust "losses" with you; and

**(2)** Pay any claim for insured "loss" jointly to you and the Loss Payee, as interests may appear.

**f. Multi-Year Policies**

If this Coverage Part is issued for more than one annual policy period, the premium may be adjusted at the inception of each following "coverage term" based on our rates in effect at that time.

**g. Non-Accumulation of Limits of Insurance**

Regardless of the number of "coverage terms" this insurance remains in force or the number of premiums paid, no Limit of Insurance accumulates from year to year or period to period.

**h. Other Insurance**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, F. Other Insurance** is replaced by the following:

**(1)** If you have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**(2)** If there is other insurance covering the same loss or damage, other than that described in **(1)** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**(3)** Irrespective of Paragraphs **h.(1)** or **(2)** above, this Coverage Part is always excess of a "service agreement". We will pay only the amount of insured "loss" that is not covered by the "service agreement" in the form of repairs or other compensation. But we will not pay more than the applicable Limit of Insurance.

**i. Protective Safeguards**

You must maintain the protective safeguards stated by you to be in effect at a "premises" when this coverage began.

If you fail to keep the protective safeguards:

**1)** In working condition at a "premises"; and

**2)** In operation when you are closed to business;

Coverage for which the protective safeguards apply is automatically suspended at that "premises" if you fail to notify us immediately. This suspension will last until the equipment or services are back in operation.

**j. Recoveries**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, I. Recoveries** is replaced by the following:

**(1)** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

**(a)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance plus the Deductible Amount, if any;

**(b)** Then to us, until we are reimbursed for the settlement made;

**(c)** Then to you, until you are reimbursed for that part of loss equal to the Deductible Amount, if any.

**(2)** You will pay us the amount of all recoveries you receive for a "loss" paid by us. But any recoveries in excess of the amount we have paid belong to you.

**(3)** Recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for our benefit.

**k. Transfer of Your Rights of Recovery Against Others to Us**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, K. Transfer of Rights of Recovery Against Others to Us** is replaced by the following:

You must transfer to us all of your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

## Section V - Definitions

The following terms, when appearing in quotation marks, have the following meanings wherever used in this Coverage Part:

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

2. "Business income" means the:

    **a.** Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

    **b.** Continuing normal operating expenses incurred, including payroll.

3. "Computer system" means a configuration of "hardware" and "electronic media and records", including "telecommunications equipment" which may be integrated into or connected to such "hardware", purposely designed to perform a particular function or functions.

4. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

    **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations and, if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

        **(1)** The day the policy period shown in the Declarations ends; or

        **(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

    **b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

5. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

6. "Denial of service" means the malicious and intentional inundating of your "computer system" with messages, instructions, queries or requests that deplete resources enough to restrict, limit or prevent access for the purposes of nuisance, sabotage or malicious tampering which has the effect of:

    **a.** Depleting system resources available through the Internet to authorized external users of your "computer system"; and

    **b.** Impeding Internet access of authorized external users to your "computer system".

7. "Electronic media and records" means information, facts, instructions, concepts and programs converted and stored in a form usable in "hardware". It also includes the materials, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs, upon which such information, facts, instructions, concepts and programs are recorded and stored.

8. "Electronic securities" means any share, participation, or other interest in property of, or an enterprise of, the issuer or an obligation of the issuer which:

    **a.** Is a type commonly dealt in upon securities exchanges or markets;

    **b.** Is either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations; and

        **(1)** Is not represented by an instrument;

        **(2)** Is part of a master or global certificate; or

        **(3)** Represents a paper certificate that has been surrendered by a financial institution and which paper certificate has been combined into a master depository note and the paper certificates are immobilized and such security is shown as an electronic entry on the account of the transferor, pledgor, or pledgee on the books of a Central Depository.

9. "Evidences of debt" means instruments executed by your customer and held by you which in the regular course of business are treated as evidencing the customer's debt to you, including records of charges and accounts receivable.

10. "Extra expense" means the necessary and reasonable expenses you incur during the "period of restoration" that you would not have incurred if there had been no "loss" due to a Covered Cause of Loss to Covered Property.

11. "Hardware" means an assemblage of electronic machine components capable of accepting and processing "electronic media and records" for the purpose of producing desired results.

    However, "hardware" does not include "telecommunications equipment".

12. "Loss" means:

Includes copyrighted material of ISO Properties, Inc., and
American Association of Insurance Services with their permission.

**MA 123 08 07**               **Page 13 of 15**

a. "Sudden and accidental" physical loss or physical damage; and

b. With respect only to "denial of service", "malicious code" or "unauthorized use", also includes "sudden and accidental" damage, loss of use, loss of access or loss of functionality.

13. "Loss establishment expenses" means actual and necessary expenses incurred at our request to assist you in establishing either the existence or the amount of loss insured under this Coverage Part.

14. "Malicious code" means a computer code created for the purpose of destroying, corrupting or otherwise adversely affecting a "computer system".

15. "Mechanical breakdown" means the malfunction or failure of moving or electronic parts, component failure, faulty installation or blowout.

16. "Money" means:

a. Currency, coins, and bank notes in current use and having a face value;

b. Travelers checks, registered checks, and money orders held for sale to the public; and

c. Electronic cash equivalents.

17. "Occurrence" means an act or event or a series of related acts or events that result in a Covered Cause of Loss.

18. "Operations" means your business activities occurring at the "premises".

19. "Other property" means any tangible property of value other than "money", "securities", "electronic securities", or "electronic media and records".

However, "other property" does not include copyrights, patents, trademarks, trade secrets or other intellectual property.

20. "Period of restoration" means that period of time that:

a. Begins with the end of the time deductible for Coverage **B** referenced in the Declarations. Such deductible commences on the date and time of direct "loss" to Covered Property due to a Covered Cause of Loss; and

b. Ends on the earlier of:

(1) The date you could restore your "operations", with reasonable speed, to the condition that would have existed if no direct "loss" to Covered Property due to a Covered Cause of Loss had occurred; or

(2) As long as it would reasonably take to repair, rebuild or replace the damaged Covered Property.

21. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

a. You are regularly or otherwise engaged in activities which taint or degrade the environment; or

b. You use, generate or produce the "pollutant".

22. "Premises" means any building you lease, rent or own and while you occupy it in conducting your business.

23. "Production equipment" means any machinery and related components, including any integrated or dedicated "computer system", which is used, or can be used, to produce or process other tangible property.

24. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or "other property" and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. "Evidences of debt" issued in connection with credit or charge cards not issued by you.

25. "Service agreement" means a service plan or warranty, or other similar service or warranty agreement, even if it is characterized as insurance.

26. "Specified causes of loss" means: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the "sudden and accidental" sinking or collapse of

land into underground empty spaces created by the action of water on limestone or dolomite. This cause of "loss" does not include:

    **(1)** The cost of filling sinkholes; or

    **(2)** Sinking or collapse of land into manmade underground cavities.

**b.** Falling objects does not include "loss" to:

    **(1)** Covered Property in the open; or

    **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means "sudden and accidental" discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**27.** "Sudden and accidental" means abrupt, immediate and brief as well as unintended and unexpected and without prior notice.

**28.** "Suspension" means the complete or partial cessation of your business activities.

**29.** "Telecommunications equipment" means telephones, including any related switching systems or similar equipment, fax machines and other similar equipment used to transmit voice or "electronic media and records" communications over telephone lines, data lines or air waves.

However, "telecommunications equipment" does not include "hardware".

**30.** "Temporarily" means:

    **a.** Not permanently; and

    **b.** For a period of 30 consecutive days or less.

**31.** "Unauthorized use" means:

    **a.** Illegal or malicious entry into your "computer system" by a person not authorized to do so by you which results in the distortion or corruption of such "computer system"; or

    **b.** Entry into or use of your "computer system" by a party:

        **(1)** Not authorized by you to do so; or

        **(2)** Authorized by you to do so, but who does so to use it in an unauthorized manner,

    Which results in the distortion or corruption of your "computer system".

**32.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE PART**

**Section IV - Additional Conditions, 3. Common Conditions** is amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**MA 4050 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENTATIVE RATE

The rates used in the development of the premium for the Commercial Inland Marine Coverage Part are tentative.  We will adjust the premium effective from the inception date of the applicable coverage once the rates are promulgated.

    1      114 S STATE ST
           CLARKS SUMMIT, PA 18411-1547

**CM 99 04 07 88**        Copyright, Insurance Services Office, Inc., 1987

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of "loss", either may make written demand for an appraisal of the "loss".  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of "loss".  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties in the Event of Loss

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss".  Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.  This will not increase the Limit of Insurance.  However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.  Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss".

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records.  In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss".

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two or More Coverages

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

### E. Loss Payment

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. We reach agreement with you;

2. The entry of final judgment; or

3. The filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

### F. Other Insurance

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from the other insurance.  We will pay the excess whether you can collect on the other insurance or not.

### G. Pair, Sets or Parts

1. **Pair or Set**

   In case of "loss" to any part of a pair or set we may:

   a. Repair or replace any part to restore the pair or set to its value before the "loss"; or

   b. Pay the difference between the value of the pair or set before and after the "loss".

2. **Parts**

   In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**H.   Privilege to Adjust with Owner**

In the event of "loss" involving property of others in your care, custody or control, we have the right to:

1.   Settle the "loss" with the owners of the property.  A receipt for payment from the owners of that property will satisfy any claim of yours.

2.   Provide a defense for legal proceedings brought against you.  If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

**I.   Recoveries**

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

**J.   Reinstatement of Limit After Loss**

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

**K.   Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment.  That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

## GENERAL CONDITIONS

**A.   Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1.   This Coverage Part;

2.   The Covered Property;

3.   Your interest in the Covered Property; or

4.   A claim under this Coverage Part.

**B.   Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

1.   There has been full compliance with all the terms of this Coverage Part; and

2.   The action is brought within 2 years after you first have knowledge of the "loss".

**C.   Liberalization**

If, within 45 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period.  We will make no additional premium charge for this additional coverage during the interim.

**D.   No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

**E.   Policy Period**

We cover "loss" commencing during the policy period shown in the Declarations.

**F.   Valuation**

The value of property will be the least of the following amounts:

1.   The actual cash value of that property;

2.   The cost of reasonably restoring that property to its condition immediately before "loss"; or

3.   The cost of replacing that property with substantially identical property.

In the event of "loss", the value of property will be determined as of the time of "loss".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULED PREMISES ENDORSEMENT

This endorsement modifies insurance provided under the following:

### ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE PART

**I.** **Schedule:**

| Location Number | Coverage A Limit of Insurance | Coverage B Limit of Insurance |
|---|---|---|
| 1-1 | 25,000 | 10,000 |

**Blanket Insurance:**

| Location Number | Coverage A Limit of Insurance | Coverage B Limit of Insurance |
|---|---|---|

**Newly Acquired Property**

Limit of Insurance: $250,000 - Unless Otherwise Stated

**II.** **Section I - Coverages** is amended as follows:

**Section I - Coverages, Coverage A - Electronic Data Processing Property, Paragraph 5. Coverage Extensions** is amended to include the following:

**NEWLY ACQUIRED PROPERTY**

**(1)** We will pay up to the Limit of Insurance for Newly Acquired Property stated in the Schedule of this endorsement in any one "occurrence" for "loss" to "newly acquired" Covered Property due to a Covered Cause of Loss:

**(a)** In excess of the Limit of Insurance for Coverage **A** applicable to the "premises" stated in the Schedule of this endorsement; or

**(b)** At a location you lease, rent or own in the "coverage territory" and while you occupy it in conducting your business, but which has not yet been reported to us as a "premises".

**(2)** You will report such "newly acquired" Covered Property to us within ninety (90) days of its acquisition and pay any additional premium due. Insurance coverage under this Coverage Extension ceases at the earlier of:

**(a)** Ninety (90) days elapsing from the date of acquisition; or

**(b)** The expiration of the policy period.

**III.** **Section IV - Additional Conditions** is amended as follows:

**3.** **Common Conditions, b. Blanket Insurance** is hereby deleted and replaced by the following:

Includes copyrighted material of ISO
Properties, Inc., with its permission.

    **b.**  **Blanket Insurance**

       If blanket insurance is indicated by (☒ ) in the Schedule of the Scheduled Premises Endorsement, the Limit of Insurance for each Coverage applies to all "premises" listed in the endorsement.

**IV.** **Section V - Definitions** is amended as follows:

  **A.**  Definition **22.** "Premises" is hereby deleted and replaced by the following:

      **22.**  "Premises" means any building located at an address referenced in the Schedule of the Scheduled Premises Endorsement you lease, rent or own and while you occupy it in conducting your business.

  **B.**  The following definition is added:

    "Newly acquired" means:

    **a.**  First acquired; or

    **b.**  First moved to a new location within the "coverage territory" not yet reported to us as a "premises",

    since the inception of the current "coverage term".

**MA 4015 06 07**

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**Page 2 of 2**

# THE CINCINNATI CASUALTY COMPANY

**A Stock Insurance Company**

# CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES)

Attached to and forming part of POLICY NUMBER:   ECP 049 60 04

Named Insured is the same as it appears in the Common Policy Declarations

| Item | Location (address) |
|---|---|
| | REFER TO CA911 |

Employee Benefit Plan(s) Included as Insureds:

**Coverage is Written:**

☒ **Primary**          ☐ **Excess**          ☐ **Coindemnity**          ☐ **Concurrent**

Coverage is provided only for the Crime Coverage for which a Limit of Insurance is shown below:

| Insuring Agreements Forming Part of This Coverage Part | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1.  Employee Theft | $    25,000 | $    500 |
| 2.  Forgery or Alteration | $    25,000 | $    500 |
| 3.  Inside the Premises - Theft of Money and Securities | $    15,000 | $    500 |
| 4.  Inside the Premises - Robbery or Safe Burglary of Other Property | $ | $ |
| 5.  Outside the Premises | $     5,000 | $    500 |
| 6.  Computer Fraud | $ | $ |
| 7.  Funds Transfer Fraud | $ | $ |
| 8.  Money Orders and Counterfeit Money | $    10,000 | $    500 |

**If added by Endorsement, Insuring Agreement(s):**

$                    $

Forms and endorsements applicable to this Coverage Part at policy inception.

```
CR0020    05/06  COMMERCIAL CRIME COVERAGE FORM (DISCOVERY FORM)
CCP401    02/14  CINCIPAK™ COMMERCIAL CRIME AMENDATORY ENDORSEMENT
CA440     08/07  COMMERCIAL CRIME COVERAGE FORM AMENDATORY ENDORSEMENT
CA911     08/07  CRIME AND FIDELITY SCHEDULE OF LOCATIONS
```

The Crime and Fidelity Coverage Part (Commercial Entities) consist of this Declaration Form and the Commercial Crime Coverage Form.

# COMMERCIAL CRIME COVERAGE FORM
# (DISCOVERY FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.g.**:

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery or Alteration

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2.a.**, on the basis that it has been

forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises - Theft of Money and Securities

**a.** We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

### 4. Inside the Premises - Robbery or Safe Burglary of Other Property

**a.** We will pay for loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

 © ISO Properties, Inc., 2005

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside the Premises**

a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

b. We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

a. To a person (other than a "messenger") outside those "premises"; or

b. To a place outside those "premises".

**7. Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**8. Money Orders and Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

a. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

b. "Counterfeit money" that is acquired during the regular course of business.

**B. Limit of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any

one of those Insuring Agreements or Coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

1. This insurance does not cover:

a. **Acts Committed by You, Your Partners or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

(1) You; or

(2) Any of your partners or "members";

whether acting alone or in collusion with other persons.

b. **Acts of Employees Learned of by You Prior to the Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

c. **Acts Of Employees, Managers, Directors, Trustees or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

(1) Whether acting alone or in collusion with other persons; or

(2) While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

d. **Confidential Information**

Loss resulting from:

(1) The unauthorized disclosure of your confidential information including, but not limited to, pat-

ents, trade secrets, processing methods or customer lists; or

**(2)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

**e. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**g. Legal Fees, Costs and Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**h. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

**i. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**j. War and Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3.**, **A.4.** and **A.5.** do not cover:

**a. Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c.  Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d.  Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e.  Motor Vehicles or Equipment and Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f.  Transfer or Surrender of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person;

**(c)** As a result of a threat to do damage to any property;

**(d)** As a result of a threat to introduce a denial of service attack into your computer system;

**(e)** As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

**(f)** As a result of a threat to contaminate, pollute or render substandard your products or goods; or

**(g)** As a result of a threat to disseminate, divulge or utilize:

**(i)** Your confidential information; or

**(ii)** Weaknesses in the source code within your computer system.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g.  Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h.  Voluntary Parting of Title to or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.**  Insuring Agreement **A.6.** does not cover:

**a.  Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b.  Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c.  Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

5.  Insuring Agreement **A.7.** does not cover:

    **COMPUTER FRAUD**

    Loss resulting from the use of a computer to fraudulently cause a transfer of "money", "securities" or "other property".

**E.  Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

1.  **Conditions Applicable to all Insuring Agreements**

    a.  **Additional Premises or Employees**

        If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

    b.  **Concealment, Misrepresentation or Fraud**

        This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

        (1)  This insurance;

        (2)  The property covered under this insurance;

        (3)  Your interest in the property covered under this insurance; or

        (4)  A claim under this insurance.

    c.  **Consolidation - Merger or Acquisition**

        If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

        (1)  You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

        (2)  For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

    d.  **Cooperation**

        You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

    e.  **Duties in the Event of Loss**

        After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

        (1)  Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

        (2)  Submit to examination under oath at our request and give us a signed statement of your answers.

        (3)  Produce for our examination all pertinent records.

        (4)  Give us a detailed, sworn proof of loss within 120 days.

        (5)  Cooperate with us in the investigation and settlement of any claim.

    f.  **Employee Benefit Plans**

        (1)  The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

        (2)  If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agree-

ment **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

  **(a)** Sustained by two or more Plans; or

  **(b)** Of commingled "funds" or "other property" of two or more Plans;

  resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**g. Extended Period to Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insur-

ance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**h. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

  **(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

  **(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

© ISO Properties, Inc., 2005

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**i.   Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j.   Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k.   Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1)  Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2)  Excess Insurance**

**(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations, by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**l.   Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease; or

**(2)** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**m.  Policy Bridge - Discovery Replacing Loss Sustained**

**(1)** If this insurance replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate

at the time this insurance became effective:

    **(a)** We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

    **(b)** However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

  **(2)** The Other Insurance Condition **E.1.k.** does not apply to this Condition.

**n.  Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**o.  Recoveries**

  **(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

    **(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

    **(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

    **(c)** Third, to you in satisfaction of any Deductible Amount; and

    **(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

  **(2)** Recoveries do not include any recovery:

    **(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

    **(b)** Of original "securities" after duplicates of them have been issued.

**p.  Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**q.  Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**r.  Valuation - Settlement**

  **(1)** The value of any loss for purposes of coverage under this policy shall be determined as follows:

    **(a)** Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

      **(i)** At face value in the "money" issued by that country; or

      **(ii)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

    **(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

 © ISO Properties, Inc., 2005

**(i)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

   **i.** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

   **ii.** The Limit of Insurance applicable to the "securities".

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

**(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

**(iii)** The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **r.(1)(c)(i)** through **r.(1)(c)(iii)**, we will not pay on a replacement cost basis for any loss or damage:

   **i.** Until the lost or damaged property is actually repaired or replaced; and

   **ii.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We will, at your option, settle loss or damage to property other than "money":

**(a)** In the "money" of the country in which the loss or damage occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(3)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable to Insuring Agreement A.1.**

  **a. Termination as to Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If

notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.p.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable to Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic and Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable to Insuring Agreements A.4. and A.5.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.**, we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable to Insuring Agreement A.6.**

**a. Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.6.**

**F. Definitions**

**1.** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**4.** "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party

 © ISO Properties, Inc., 2005

under circumstances which, if true, would constitute a loss under this insurance.

5. "Employee":

a. "Employee" means:

(1) Any natural person:

(a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

(b) Who you compensate directly by salary, wages or commissions; and

(c) Who you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent "employee" as defined in Paragraph a.(1), who is on leave; or

(b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph a.(2);

(4) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

(b) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

(5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

(6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

(7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this insurance; or

(8) Any of your "managers", directors or trustees while:

(a) Performing acts within the scope of the usual duties of an "employee"; or

(b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

b. "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph 5.a.

6. "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

7. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. "Fraudulent instruction" means:

a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

b. A written instruction (other than those described in Insuring Agree-

ment **A.2.**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

c. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

9. "Funds" means "money" and "securities".

10. "Manager" means a person serving in a directorial capacity for a limited liability company.

11. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

12. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

13. "Money" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

14. "Occurrence" means:

a. Under Insuring Agreement **A.1.**:

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

b. Under Insuring Agreement **A.2.**:

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

c. Under All Other Insuring Agreements:

(1) An individual act or event;

(2) The combined total of all separate acts or events whether or not related; or

(3) A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

a. Caused or threatened to cause that person bodily harm; or

b. Committed an obviously unlawful act witnessed by that person.

18. "Safe burglary" means the unlawful taking of:

a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

b. A safe or vault from inside the "premises".

19. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by

   © ISO Properties, Inc., 2005

actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**20.** "Theft" means the unlawful taking of property to the deprivation of the Insured.

**21.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

**a.** By means of electronic, telegraphic, cable, teletype, telefacsimile or tele-

phone instructions communicated directly through an electronic funds transfer system; or

**b.** By means of written instructions (other than those described in Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**22.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# COMMERCIAL CRIME AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE PART**

**I.**   Section **E. Conditions, 1. Conditions Applicable to All Insuring Agreements, f. Employee Benefit Plans, (1)** is deleted in its entirety and replaced by the following:

   **(1)**   "Employee benefit plans" (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

**II.**   Section **F. Definitions** is amended by deleting definition **6.** "Employee benefit plan" in its entirety and replacing it with the following:

   **6.**   "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL CRIME COVERAGE FORM
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE FORM**

**A.** It is agreed that **E. Conditions, 1. Conditions Applicable to all Insuring Agreements, j. Liberalization** is deleted in its entirety and replaced by the following:

**j.   Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.**   The date we implemented the change in your state; or

**b.**   The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**B.** It is agreed that **D. Exclusions, 1. i. Pollution** is deleted in its entirety and replaced by the following:

**i.   Pollutants**

Loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.**   You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.**   You use, generate or produce the pollutant.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRIME AND FIDELITY SCHEDULE OF LOCATIONS

This endorsement modifies insurance provided under the following:

> **COMMERCIAL CRIME COVERAGE FORM**
> **COMMERCIAL CRIME POLICY**
> **EMPLOYEE THEFT AND FORGERY POLICY**
> **GOVERNMENT CRIME COVERAGE FORM**
> **GOVERNMENT CRIME POLICY**

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 114 S STATE ST | | | |
| | CLARKS SUMMIT, PA 18411-1547 | | | |

# THE **CINCINNATI CASUALTY COMPANY**

**Mailing Address:**     P.O. BOX 145496, CINCINNATI OHIO 45250-5496
**Home Office:**     FAIRFIELD, OHIO 45014-5141
513-870-2000

## BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER:    EBA 049 60 04
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**        **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 8, 9 | $    1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $      Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $      Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | | $ | |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | | $ | |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $     Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded for each covered auto. See Item Three for hired or borrowed "autos". | |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $      for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4183 | 02/06 | AUTOMOBILE SCHEDULE |
| AA101 | 03/06 | BUSINESS AUTO COVERAGE FORM |
| AA2009 | 01/17 | CHANGES - TOWING AND LABOR |
| AA296 | 07/12 | CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:
```
AA4263    04/10  OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
AA4337PA  08/16  PENNSYLVANIA CHANGES - BUSINESS AUTO COVERAGE FORM
```

**IMPORTANT NOTICE: YOUR POLICY** ☐ **PROVIDES** ☒ **DOES NOT PROVIDE COLLISION COVERAGE ON RENTAL VEHICLES. IF COLLISION COVERAGE IS PROVIDED, PLEASE REFER TO THE PORTION OF YOUR POLICY PROVIDING THIS COVERAGE FOR ANY LIMITATIONS THAT MAY APPLY.**

\* This policy may be subject to final audit

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

## DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

## SECTION I - COVERED AUTOS                                      Beginning on Page

Description of Covered Auto Designation Symbols..........................................................................1
Owned Autos You Acquire After the Policy Begins ........................................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos......................................................................................................2

## SECTION II - LIABILITY COVERAGE

Coverage...................................................................................................................................2
Who is an Insured .....................................................................................................................2
Coverage Extensions
   Supplementary Payments .....................................................................................................2
   Out of State.........................................................................................................................3
Exclusions .................................................................................................................................3
Limit of Insurance .....................................................................................................................5

## SECTION III - PHYSICAL DAMAGE COVERAGE

Coverage...................................................................................................................................7
Exclusions .................................................................................................................................7
Limit of Insurance .....................................................................................................................8
Deductible.................................................................................................................................8

## SECTION IV - BUSINESS AUTO CONDITIONS

Loss Conditions
   Appraisal for Physical Damage Loss ......................................................................................9
   Duties in the Event of Accident, Claim, Suit or Loss...............................................................9
   Legal Action Against Us ........................................................................................................9
   Loss Payment - Physical Damage Coverages..........................................................................9
   Transfer of Rights of Recovery Against Others to Us.............................................................10
General Conditions
   Bankruptcy ........................................................................................................................10
   Concealment, Misrepresentation or Fraud...........................................................................10
   Liberalization .....................................................................................................................10
   No Benefit to Bailee - Physical Damage Coverages ..............................................................10
   Other Insurance .................................................................................................................10
   Premium Audit...................................................................................................................10
   Policy Period, Coverage Territory ........................................................................................10
   Two or More Coverage Forms or Policies Issued by Us..........................................................11

## SECTION V - DEFINITIONS ................................................................................................ 11

## COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number   **EBA 049 60 04** , effective   07-19-2018

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
#### State: PA

Bodily Injury:   1,000,000 CSL                Property Damage:   INCLUDED

| Veh. No. | Vehicle Information | | | | | | |
|---|---|---|---|---|---|---|---|
| | HIRED AND NON-OWNED | | | | | Class: | Territory |
| | OTC-COMP DED: N/A | | | | Coll Ded: N/A | | |

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|---|---|---|---|---|---|---|---|
| 54 | INCL | | | | | | 54 |

SYMBOLS:

| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists |
| | | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

| SYMBOL | DESCRIPTION |
|---|---|

1 = ANY "AUTO".

2 = OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

3 = OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

4 = OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

5 = OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

6 = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

7 = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

an "auto" you previously owned that had that coverage; and

    **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

    **a.** Breakdown;

    **b.** Repair;

    **c.** Servicing;

    **d.** "Loss"; or

    **e.** Destruction.

# SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

    **a.** You for any covered "auto".

    **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

        **(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

        **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

        **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

        **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

        **(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

    **c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

    **a. Supplementary Payments**

    We will pay for the "insured":

        **(1)** All expenses we incur.

        **(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b.** **Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B.** **Exclusions**

This insurance does not apply to any of the following:

**1.** **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2.** **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3.** **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4.** **Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    (3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    (1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    (2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    (1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    (2) The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

    (1) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

    (2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**D. Mobile Equipment Subject to Motor Vehicle Insurance Laws**

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE**, irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

## SECTION III - PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**5. Other Insurance**

    **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

        **(1)** Excess while it is connected to a motor vehicle you do not own.

        **(2)** Primary while it is connected to a covered "auto" you own.

    **b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

    **c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

    **d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

    **a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

    **b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

    **a.** During the Policy Period shown in the Declarations; and

    **b.** Within the coverage territory.

The coverage territory is:

    **a.** The United States of America;

    **b.** The territories and possessions of the United States of America;

    **c.** Puerto Rico;

    **d.** Canada; and

    **e.** Anywhere in the world if:

        **(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

        **(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

# SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place

where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

**1.** Means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**2.** Does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **(1)** Snow removal;

    **(2)** Road maintenance, but not construction or resurfacing; or

    **(3)** Street cleaning;

  **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

  **1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

  **2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

  **1.** Damages because of "bodily injury" or "property damage"; or

  **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

  "Suit" includes:

  **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

  **(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

  **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1.  **SECTION III - PHYSICAL DAMAGE COV-
    ERAGE, A. Coverage, 2. Towing** is deleted
    in its entirety and replaced with:

    2.  **Towing**

        We will pay up to the limit shown in the
        Declarations for towing and labor costs
        incurred each time a covered "auto" is
        disabled. However, the labor must be per-
        formed at the place of disablement.

**AA 2009 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

      Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

AA 296 07 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**AA 4263 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - BUSINESS AUTO COVERAGE FORM

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

Paragraph **2.a. Supplementary Payments** is amended to include the following:

> Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

**B. Changes In Conditions**

1. Paragraph **2.b.(5)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is deleted in its entirety and replaced by the following:

   **(5)** After we show good cause, submit to examination at our expense, by physicians of our choice.

2. Paragraph **5. Transfer Of Rights Of Recovery Against Others To Us** Condition is amended to include the following:

   If we make any payment due to an "accident" and the "insured" recovers from another party in a separate claim or "suit", the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid less reasonable attorneys' fees, costs and expenses incurred by the "insured" to the extent such payment duplicates any amount we have paid under this coverage.

3. Paragraph **5. Other Insurance** Condition is amended to include the following:

   If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then:

   **a.** For any "auto" you own, which is loaned to a customer as a temporary substitute for an "auto" insured under a "customer's private passenger automobile insurance policy" which is out of use because it is being transported, serviced, repaired or inspected, Covered Autos Liability, but only with respect to damages because of "bodily injury" and Physical Damage Coverage provided by this Coverage Form shall be excess in the event of an "accident" or "loss".

   **b.** For any "auto" insured under your "customer's private passenger automobile insurance policy", while it is being transported, serviced, repaired or inspected by you or your "employee":

   **(1)** Covered Autos Liability, but only with respect to damages because of "bodily injury";

   **(2)** Comprehensive Coverage;

   **(3)** Specified Cause Of Loss Coverage; and/or

   **(4)** Collision Coverage;

   provided by this Coverage Form shall be primary in the event of an "accident" or "loss".

4. Paragraph **B. General Conditions** is amended to include the following:

   **9. Constitutionality Clause**

   The premium for, and the coverages of, this Coverage Form have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment, the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we shall have the right to recompute the premium payable for the Coverage Form and void or amend the provi-

sions of the Coverage Form, subject to the approval of the Insurance Commissioner.

## 10. Conformity Clause

If you are a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, then whenever an "auto" insured under your "customer's private passenger automobile insurance policy" is being transported, serviced, repaired or inspected by you or your "employee":

(1) The provisions of the:

   (a) Covered Autos Liability, but only with respect to damages because of "bodily injury";

   (b) Comprehensive Coverage;

   (c) Specified Cause Of Loss Coverage; and/or

   (d) Collision Coverage;

provided by this Coverage Form are hereby amended to conform to 40 Pa. Stat. Ann. § 991.2007a; and

(2) Pursuant to 40 Pa. Stat. Ann. § 991.2007a, the Limits Of Insurance provided in the Schedule or in the Declarations are hereby increased as needed to an amount equal to the:

   (a) Applicable limit(s);

   (b) Actual cash value; and/or

   (c) Amount necessary to repair or replace the property with other property of like kind and quality;

set forth in the "customer's private passenger automobile insurance policy".

## C. Changes In Definitions

For motor vehicle dealers as defined in the Pennsylvania Board of Vehicles Act, 63 Pa. Stat. Ann. § 818.2, the following definition is added:

"Customer's private passenger automobile insurance policy" means a private passenger automobile insurance policy that:

1. Is currently in effect; and

2. Lists an "auto" owned by your customer or a "customer's auto" in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI CASUALTY COMPANY

## COMMERCIAL UMBRELLA LIABILITY COVERAGE
## PART DECLARATIONS

Previous Policy Number

Attached to and forming part of POLICY NUMBER  ECP 049 60 04       Effective Date: 07-19-2018

**NAMED INSURED** is the same as it appears in the Common Policy Declarations unless another entry is made here.

---

**LIMITS OF INSURANCE**
$   1,000,000 Each Occurrence Limit       $   1,000,000 Aggregate Limit

**ADVANCE PREMIUM** $   1,754
Applicable to Premium, if box is checked:
☐ Subject to Annual Adjustment
☐ Subject to Audit (see Premium Computation Endorsement for Rating Basis)

### SCHEDULE OF UNDERLYING INSURANCE

| Insurer, Policy Number & Period: | Underlying Insurance: | Underlying Limits: |
|---|---|---|
| **(a)** | Employer's Liability | Bodily Injury by Accident:<br>$     Each Accident<br>Bodily Injury by Disease:<br>$     Each Employee<br>Bodily Injury by Disease:<br>$     Policy Limit |
| **(b)** CINCINNATI CAS. CO.<br>ECP 049 60 04<br>07-19-2018 TO 07-19-2021 | ☒ Commercial General Liability<br>Including:<br>☒ Products-Completed Opera-<br>tions Coverage<br><br>☐ Cemetery Professional<br>☐ Druggist Professional<br>☐ Funeral Service Provider<br>☐ Pedorthists Professional<br><br>or<br><br>☐ Business Liability Including:<br>☐ Funeral Service Provider<br>☐ Druggist Professional | Bodily Injury and Property Damage Liability:<br>$   1,000,000 Each Occurrence Limit<br>$   2,000,000 General Aggregate Limit<br>$   2,000,000 Products-Completed<br>Operations Aggregate<br>Limit<br><br><br>Personal and Advertising Injury Limit:<br>$   1,000,000 Any One Person or<br>Organization |
| **(c)** CINCINNATI CAS. CO.<br>EBA 049 60 04<br>07-19-2018 TO 07-19-2021 | Automobile Liability<br>Including:<br>☐ Owned Autos<br>☒ Non-Owned Autos<br>☒ Hired Autos<br>☐ Any Auto | Bodily Injury Liability Limit:<br>$     Each Person<br>$     Each Occurrence<br>Property Damage Liability Limit:<br>$     Each Occurrence<br>or<br>Bodily Injury Liability and / or Property Damage<br>Liability or Both Combined Limit:<br>$   1,000,000 Each Occurrence |

| | | | | |
|---|---|---|---|---|
| **(d)** | Professional | $ | | |
| | | $ | | Aggregate |

| | | | | |
|---|---|---|---|---|
| **(e)** CINCINNATI CAS. CO.<br>ECP 049 60 04<br>07-19-2018 TO 07-19-2021 | Employee Benefit Liability | $<br>$ | 1,000,000<br>3,000,000 | Each Employee Limit<br>Aggregate Limit |
| **(f)** CINCINNATI CAS. CO.<br>ECP 049 60 04<br>07-19-2018 TO 07-19-2021 | Liquor Liability | $<br>$ | 1,000,000<br>2,000,000 | Each Common Cause Limit<br>Aggregate Limit |

**Other**

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | |
|---|---|---|
| US101UM | 12/04 | COMMERCIAL UMBRELLA - TABLE OF CONTENTS |
| US302 | 12/04 | POLLUTANT EXCLUSION - OTHER THAN AUTO |
| US3038 | 09/02 | PRODUCTS-COMPLETED OPERATIONS HAZARD REDEFINED |
| US306 | 12/04 | AUTO LIABILITY LIMITATION |
| US3093 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| US349 | 12/04 | LIQUOR LIABILITY LIMITATION |
| US4062 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION |
| US407 | 12/04 | EMPLOYEE BENEFIT LIABILITY |
| US4098 | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |
| US450PA | 01/96 | PENNSYLVANIA NOTICE |

# COMMERCIAL UMBRELLA - TABLE OF CONTENTS

**Coverage Part Provision:**                                                     **Begins on Page:**

Preamble ................................................................................................................. 3

**SECTION I - COVERAGE:** ...................................................................................... 3

    **A.**   **Insuring Agreement** ..................................................................................... 3

    **B.**   **Exclusions:** ................................................................................................... 4

          **1.**   Asbestos ................................................................................................ 4
          **2.**   Breach of Contract, Failure to Perform, Wrong Description and
               Violation of Another's Rights ................................................................. 4
          **3.**   Contractual Liability ............................................................................. 4
          **4.**   Damage to Impaired Property or Property Not Physically Injured ........... 4
          **5.**   Damage to Property .............................................................................. 4
          **6.**   Damage to Your Product ....................................................................... 4
          **7.**   Damage to Your Work ........................................................................... 4
          **8.**   Distribution of Material in Violation of Statutes ..................................... 5
          **9.**   Electronic Chatrooms or Bulletin Boards .............................................. 5
          **10.**  Electronic Data ..................................................................................... 5
          **11.**  Employer's Liability Limitation .............................................................. 5
          **12.**  Employment-Related Practices ............................................................. 5
          **13.**  Expected or Intended Injury ................................................................. 5
          **14.**  Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses ........ 6
          **15.**  Infringement of Copyright, Patent, Trademark or Trade Secret ............... 6
          **16.**  Pollutant - Auto .................................................................................... 6
          **17.**  Pollutant - Other Than Auto .................................................................. 7
          **18.**  Recall of Products, Work or Impaired Property ...................................... 9
          **19.**  Unauthorized Use of Another's Name or Product ................................... 9
          **20.**  Uninsured / Underinsured Motorist ....................................................... 9
          **21.**  War ...................................................................................................... 9
          **22.**  Workers' Compensation ....................................................................... 9

    **C.**   **Defense and Supplementary Payments** ................................................... 9

**SECTION II - WHO IS AN INSURED** ...................................................................... 10

**SECTION III - LIMITS OF INSURANCE** ................................................................. 11

**SECTION IV - CONDITIONS:** ................................................................................. 12

          **1.**   Appeals ................................................................................................ 12
          **2.**   Audit .................................................................................................... 13
          **3.**   Bankruptcy ........................................................................................... 13
          **4.**   Duties in the Event of Occurrence, Claim or Suit .................................. 13
          **5.**   First Named Insured ............................................................................. 13
          **6.**   Legal Action Against Us and Loss Payments ......................................... 13
          **7.**   Liberalization ....................................................................................... 14
          **8.**   Maintenance of Underlying Insurance ................................................... 14
          **9.**   Other Insurance ................................................................................... 14
          **10.**  Premium .............................................................................................. 14
          **11.**  Representations .................................................................................... 14
          **12.**  Separation of Insureds ......................................................................... 14
          **13.**  Transfer of Rights of Recovery Against Others to Us ............................. 15
          **14.**  When We Do Not Renew ....................................................................... 15

**SECTION V - DEFINITIONS:** .................................................................................. 15

          **1.**   "Advertisement" .................................................................................... 15
          **2.**   "Authorized representative" ................................................................... 15
          **3.**   "Auto" .................................................................................................. 15
          **4.**   "Bodily injury" ...................................................................................... 16
          **5.**   "Coverage term" .................................................................................. 16
          **6.**   "Coverage territory" ............................................................................. 16

| Coverage Part Provision: | Begins on Page: |
|---|---|
| 7. "Electronic data" | 16 |
| 8. "Employee" | 16 |
| 9. "Executive officer" | 16 |
| 10. "Hostile fire" | 16 |
| 11. "Impaired property" | 16 |
| 12. "Insured contract" | 16 |
| 13. "Leased worker" | 17 |
| 14. "Loading or unloading" | 17 |
| 15. "Mobile equipment" | 18 |
| 16. "Occurrence" | 18 |
| 17. "Personal and advertising injury" | 18 |
| 18. "Pollutants" | 19 |
| 19. "Products-completed operations hazard" | 19 |
| 20. "Property damage" | 19 |
| 21. "Subsidiary" | 19 |
| 22. "Suit" | 19 |
| 23. "Temporary worker" | 20 |
| 24. "Ultimate net loss" | 20 |
| 25. "Underlying insurance" | 20 |
| 26. "Underlying limit" | 20 |
| 27. "Workplace" | 20 |
| 28. "Your product" | 20 |
| 29. "Your work" | 20 |
| **NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT** | 21 |

Includes copyrighted material of ISO
Properties, Inc., with its permission.

# COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS.**

## SECTION I - COVERAGE

### A.  Insuring Agreement

1.  We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

    a.  Which is in excess of the "underlying insurance"; or

    b.  Which is either excluded or not insured by "underlying insurance".

2.  This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

    a.  The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    b.  The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

    c.  The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and

    d.  Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or

that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part.

3.  "Bodily injury" or "property damage" which:

    a.  Occurs during the "coverage term"; and

    b.  Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have occurred;

    includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

4.  "Personal and advertising injury" caused by an offense which:

    a.  Was committed during the "coverage term"; and

    b.  Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have been committed;

    includes any continuation, change or resumption of that "personal and advertising injury" offense after the end of the "coverage term" in which it first became known by you.

5.  You will be deemed to know that "bodily injury" or "property damage" has occurred, or that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

    a.  Reports all, or any part, of the "bodily injury", "personal and advertising injury" or "property damage" to us, or any other insurer;

    b.  Receives a written or verbal demand or claim for damages because of the "bodily injury", "personal and advertising injury" or "property damage";

    c.  First observes, or reasonably should have first observed, the "bodily injury" or "property damage", or the offense that caused the "personal and advertising injury";

    d.  Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that "bodily injury" or "prop-

Includes copyrighted material of ISO
Properties, Inc., with its permission.

erty damage" had occurred or had begun to occur, or that the "personal and advertising injury" offense had been committed or had begun to be committed; or

**e.** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury", "personal and advertising injury" or "property damage" is substantially certain to occur.

6. The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE.**

No other obligation or liability to pay sums or perform acts or services is covered, unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments.**

**B. Exclusions**

This insurance does not apply to:

1. **Asbestos**

   Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

2. **Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

   "Personal and advertising injury":

   **a.** Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   **b.** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   **c.** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"; or

   **d.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

3. **Contractual Liability**

   Any liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "bodily injury", "personal

and advertising injury" or "property damage":

**a.** That the insured would have in the absence of the contract or agreement; or

**b.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury", "personal and advertising injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

4. **Damage to Impaired Property or Property Not Physically Injured**

   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   **a.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   **b.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

   This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

5. **Damage to Property**

   "Property damage" to property owned by any insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

6. **Damage to Your Product**

   "Property damage" to "your product" arising out of it or any part of it.

7. **Damage to Your Work**

   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Includes copyrighted material of ISO Properties, Inc., with its permission.

8. **Distribution of Material in Violation of Statutes**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

9. **Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

10. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

11. **Employer's Liability Limitation**

Any liability arising from any injury to:

a. An "employee" of the insured sustained in the "workplace";

b. An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

c. The spouse, child, parent, brother or sister of that "employee" as a consequence of **a.** or **b.** above.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply when such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or

would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

12. **Employment-Related Practices**

Any liability arising from any injury to:

a. A person arising out of any:

(1) Refusal to employ that person;

(2) Termination of that person's employment; or

(3) Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b. The spouse, child, parent, brother or sister of that person as a consequence of any injury to that person at whom any of the employment-related practices described in Paragraphs **(1), (2),** or **(3)** above is directed.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

13. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

However, this exclusion does not apply to:

a. "Bodily injury" resulting from the use of reasonable force to protect persons or property; or

b. "Bodily injury" or "property damage" resulting from the use of reasonable force to prevent or eliminate danger

Includes copyrighted material of ISO Properties, Inc., with its permission.

in the operation of "autos" or water-craft.

**14. Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses**

"Personal and advertising injury":

a. Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

b. Arising out of oral or written publication of material whose first publication took place before the later of the following:

   (1) The inception of this Coverage Part; or

   (2) The "coverage term" in which insurance coverage is sought;

c. Arising out of a criminal act committed by or at the direction of the insured; or

d. Committed by an insured whose business is:

   (1) Advertising, broadcasting, publishing or telecasting;

   (2) Designing or determining content of web-sites for others; or

   (3) An Internet search, access, content or service provider.

   However, Paragraph **d.** does not apply to Paragraphs **17.a., b., c., d.** and **i.** of "personal and advertising injury" under **SECTION V - DEFINITIONS.**

   For the purposes of Paragraph **d.**, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**15. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.

**16. Pollutant - Auto**

a. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

   (1) That are, or that are contained in any property that is:

      (a) Being transported or towed by, handled, or handled for movement into, onto or from, an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

      (b) Otherwise in the course of transit by or on behalf of the insured; or

      (c) Being stored, disposed of, treated or processed in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

   (2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; or

   (3) After the "pollutants" or any property in which the "pollutants" are contained are moved from an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion to the place where they are finally delivered, disposed of or abandoned by the insured.

   Paragraph **(1)** above does not apply to "bodily injury" or "property damage" arising from fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their

behalf in any other fashion or its parts, if:

**(a)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(b)** The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in Paragraphs **f.(2)** and **(3)** of the definition of "mobile equipment".

However, this exception to Paragraph **(1)** does not apply if the fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed, emitted or released.

Paragraphs **(2)** and **(3)** above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to "pollutants" not in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; and

**(b)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**b.** Any liability caused by "pollutants" and arising from the operation, maintenance, use, "loading or unloading" of an "auto", for which insurance coverage is excluded by "underlying insurance".

### 17. Pollutant - Other Than Auto

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, Paragraph **a.(1)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury", if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(b)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your "underlying insurance" as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

Includes copyrighted material of ISO Properties, Inc., with its permission.

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

(4) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

However, Paragraph a.(4) of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

(a) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by

such insured, contractor or subcontractor;

(b) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(c) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(5) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

b. "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

c. Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph c. does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement,

Includes copyrighted material of ISO Properties, Inc., with its permission.

or such claim or "suit" by or on behalf of a governmental authority.

**d.** Any liability caused by "pollutants", for which insurance coverage is excluded by "underlying insurance".

### 18. Recall of Products, Work or Impaired Property

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

**b.** "Your work"; or

**c.** "Impaired Property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### 19. Unauthorized Use of Another's Name or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag or any other similar tactics to mislead another's potential customers.

### 20. Uninsured / Underinsured Motorist

Any liability or obligation to any insured or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

### 21. War

Any liability, however caused, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

### 22. Workers' Compensation

Any liability or obligation of the insured under any workers' compensation, unemployment compensation, disability benefits or similar law. However, this exclusion does not apply to liability of others assumed by you under an "insured contract" in existence at the time of "occurrence".

### C. Defense and Supplementary Payments

**1.** We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

**a.** The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

**b.** Damages are sought for "bodily injury", "personal and advertising injury" or "property damage" which are not covered by "underlying insurance" or other insurance.

**2.** Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

**3.** We have no duty to investigate, settle or defend any claim or "suit" other than those circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or "suit" to which this insurance applies. If we exercise this right, we will do so at our expense.

**4.** If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

**a.** All expenses we incur.

**b.** The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

**c.** The cost of bonds to appeal a judgment or award in any claim or "suit" we defend and the cost of bonds to

release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

   **d.** Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including the actual loss of earnings.

   **e.** All costs taxed against the insured in the "suit".

**5.** If there is no underlying insurer obligated to do so, we will pay the following for an "occurrence" to which this insurance applies, even if we have no duty to provide a defense:

   **a.** Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on the period of time after the offer.

   **b.** All interest awarded against the insured on the full amount of any judgment that accrues:

      **(1)** After entry of the judgment; and

      **(2)** Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**6.** The payments described in Paragraphs **4.** and **5.** above will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

**7.** If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance, occupancy or use of an "auto":

   **a.** If you are designated in the Declarations as:

      **(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

      **(2)** A partnership or joint venture, you are an insured. Your members, partners and their spouses are also insureds, but only with respect to the conduct of your business.

      **(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

      **(4)** An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. Each of the following is also a Named Insured:

         **(a)** Any "subsidiary" company of such organization, including any "subsidiary" of such "subsidiary":

            **1)** Existing at the inception of this Coverage Part; or

            **2)** Formed or acquired on or after the inception of this Coverage Part.

         **(b)** Any other company controlled and actively managed by such organization or any "subsidiary" thereof:

            **1)** At the inception of this Coverage Part; or

            **2)** If the control and active management thereof is acquired on or after the inception of this Coverage Part.

      **(5)** A trust, you are an insured. Your trustees are also insureds, but only

Includes copyrighted material of ISO Properties, Inc., with its permission.

with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Any "employee" of yours while acting within the scope of their duties as such.

**(2)** Any person or organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

**(a)** With respect to liability arising out of the maintenance or use of that property; and

**(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such.

**2.** Only with respect to liability arising out of the ownership, maintenance, occupancy or use of an "auto":

**a.** You are an insured.

**b.** Anyone else while using with your permission an "auto" you own, hire or borrow is also an insured except:

**(1)** The owner or any other person or organization (except your "executive officers" or principals) from whom you hire or borrow an "auto", unless such persons or organizations are insureds in your "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance". This exception does not apply if the "auto" is a trailer or semitrailer connected to an "auto" you own.

**(2)** Your "employee", if the "auto" is owned by that "employee" or a member of his or her household, unless:

**(a)** Such "employee" is an insured with respect to that "auto" in the "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance"; or

**(b)** The "bodily injury" or "property damage" is sustained by a co-"employee" of such "employee".

**(3)** Someone using an "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos", unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from an "auto".

**c.** Anyone liable for the conduct of an insured described in Paragraphs **2.a.** and **b.** above is also an insured, but only if they are provided insurance coverage for such liability by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance and then only for such hazards for which coverage is provided by such "underlying insurance".

**3.** At your option and subject to the terms of this insurance, any additional insureds not addressed by Paragraphs **1.** and **2.** above covered in the "underlying insurance" listed in the Schedule of Underlying Insurance are also insureds, but only to the extent that insurance is provided for such additional insureds thereunder.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all damages:

**a.** Included in the "products-completed operations hazard";

**b.** Because of "bodily injury" by disease sustained by your "employees" arising out of and in the course of their employment by you; or

Includes copyrighted material of ISO Properties, Inc., with its permission.

c. Because of "bodily injury", "personal and advertising injury" or "property damage" not included within **a.** or **b.** above. However, this Aggregate Limit will not apply to damages which are not subject to an Aggregate Limit in the "underlying insurance".

The Aggregate Limit applies separately to **a.**, **b.** and **c.** The Aggregate Limit described in **c.** will apply only to damages not subject to **a.** or **b.** above.

3. Subject to the Limit of Insurance described in **2.c.** above:

   a. Only in the event that "underlying insurance" specifically listed in the Schedule of Underlying Insurance provides an annual Aggregate Limit of Insurance for damages that would not be subject to **2.a.** or **b.** above that is applicable separately to each:

      **(1)** Location owned by, or rented or leased to you solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed to operations at only a single location, then the Aggregate Limit described in **2.c.** above applies separately to each location owned by, or rented or leased to you.

      **(2)** Of your construction projects solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed only to ongoing operations and only at a single construction project, then the Aggregate Limit described in **2.c.** above applies separately to each of your construction projects.

   b. Only with respect to the application of Limits of Insurance described in **3.a.** above, the following terms location and construction project will have the following meanings:

      **(1)** Location means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

      **(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on your behalf at the same location for the same persons or entities, no matter how often or under how many different contracts, will be deemed to be a single construction project.

4. Subject to the limits described in **2.** and **3.** above, the Each Occurrence Limit is the most we will pay for the "ultimate net loss":

   a. In excess of the applicable limits of "underlying insurance"; or

   b. If an "occurrence" is not covered by "underlying insurance", but covered by the terms and conditions of this Coverage Part,

   Because of all "bodily injury", "personal and advertising injury" and "property damage" arising out of any one "occurrence".

   We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for each "occurrence" because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

5. Subject to the limits described in **2.**, **3.** and **4.** above and to the terms and conditions of the "underlying insurance":

   a. If the limits of "underlying insurance" have been reduced by payment of claims, this Coverage Part will continue in force as excess of the reduced "underlying insurance"; or

   b. If the limits of "underlying insurance" have been exhausted by payment of claims, this Coverage Part will continue in force as "underlying insurance".

6. The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION IV - CONDITIONS

1. **Appeals**

   If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying limit", we may elect to do so at our own expense. We shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond:

   a. Our applicable Limits of Insurance for all "ultimate net loss";

   b. Our applicable Defense and Supplementary Payments as described in **SEC-**

Includes copyrighted material of ISO Properties, Inc., with its permission.

**TION I - COVERAGE, C. Defense and Supplementary Payments**; and

   **c.** The expense of such appeal.

**2. Audit**

If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

   **a.** The premium shown in the Premium Computation Endorsement as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

      **(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

      **(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

   However, in no event will the earned premium be less than the Minimum Premium stated in the Premium Computation Endorsement.

   **b.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**3. Bankruptcy**

Bankruptcy or insolvency of the insured or the insured's estate shall not relieve us of any obligations under this Coverage Part.

**4. Duties in the Event of Occurrence, Claim or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim or "suit". To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence".

   This requirement applies only when the "occurrence" is known to an "authorized representative".

   **b.** If a claim is made or "suit" is brought against any insured that is likely to involve this Coverage Part, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

   This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to an "authorized representative".

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. First Named Insured**

The person or organization first named in the Declarations will act on behalf of all other insureds where indicated in this Coverage Part.

**6. Legal Action Against Us and Loss Payments**

   **a.** No legal action may be brought against us unless there has been full compliance with all the terms of this Coverage Part nor until the amount of the insured's obligation to pay has been finally determined as provided below. No person or organization has any right under this Coverage Part to bring us into any action to determine the liability of the insured.

   **b.** We shall be liable for payment of the "ultimate net loss" for any "occurrence" to which this Coverage Part applies:

      **(1)** For "occurrences" not covered by "underlying insurance"; or

Includes copyrighted material of ISO Properties, Inc., with its permission.

(2) In excess of the "underlying limit" applicable to the "occurrence" only after the insurers who provide the applicable "underlying insurance" have paid or become obligated to pay the amount of the "underlying limit" applicable to the "occurrence".

Our payment will be made following final determination of the amount of the insured's obligation to pay either by final judgment against the insured or by written agreement with the insured, the claimant, the underlying insurers and us.

7. **Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

a. The date we implemented the change in your state; or

b. The date this Coverage Part became effective; and

Will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

8. **Maintenance of Underlying Insurance**

a. While this Coverage Part is in effect, the insured shall maintain in force the "underlying insurance" listed in the Schedule of Underlying Insurance as collectible insurance. The terms, conditions and endorsements of "underlying insurance" will not materially change and renewals or replacements of "underlying insurance" will not be more restrictive in coverage.

b. Limits of "underlying insurance" will not be reduced, except for any reduction or exhaustion in the aggregate limits of insurance due to payment of claims which are in accordance with **SECTION I - COVERAGE, A. Insuring Agreement,** Paragraph **2.** of this Coverage Part.

c. In the event you fail or neglect to maintain "underlying insurance" as required, this Coverage Part will apply as though such "underlying insurance" was in force and collectible at the time a claim is presented to us which is in accordance with **SECTION I - COVERAGE, A. Insuring Agreement,** Paragraph **2.** of this Coverage Part.

d. The limits of "underlying insurance" shall be deemed applicable, regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the insured's failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

9. **Other Insurance**

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

10. **Premium**

The premium for this Coverage Part shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment, except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this Coverage Part.

You shall maintain records of such information as is necessary for premium computation, and shall, if requested by us, send copies of such records to us at the end of the "coverage term" and at such times during the policy period as we may direct.

11. **Representations**

a. By acceptance of this Coverage Part, you agree that the statements in the Declarations are your agreements and representations, that this Coverage Part is issued in reliance upon the truth of such representations and that this Coverage Part embodies all agreements existing between you and us or any of our agents relating to this insurance.

b. However, to the extent that the following applies in the "underlying insurance" listed specifically in the Schedule of Underlying Insurance, it will also apply to this Coverage Part:

Based on our reliance upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of this Coverage Part, we will not reject coverage under this Coverage Part based solely on such failure.

12. **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**13. Transfer of Rights of Recovery Against Others to Us**

**a.** If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b.** Any recoveries shall be applied as follows:

**(1)** First, we will reimburse anyone, including the insured, the amounts actually paid by them that were in excess of our payments;

**(2)** Next, we will be reimbursed to the extent of our actual payment; and

**(3)** Lastly, any amounts left after meeting the obligations outlined in **(1)** and **(2)** above will be distributed to anyone else known to us at the time a recovery is made and who is legally entitled to such recovery.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled. If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

**c.** If prior to an "occurrence" to which this Coverage Part would apply, you and the issuer of your applicable "underlying insurance" listed specifically in the Schedule of Underlying Insurance waive any right of recovery against a person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

**14. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees" assigned to manage your insurance program, or assigned to give or receive notice of an "occurrence", claim or "suit" are also "authorized representatives".

**3.** "Auto" means:

**a.** Any land motor vehicle, trailer or semi-trailer designed for travel on public roads; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

"Auto" does not include "mobile equipment".

Includes copyrighted material of ISO Properties, Inc., with its permission.

4. "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

5. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

      (1) The day the policy period shown in the Declarations ends; or

      (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

   b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

6. "Coverage territory" means anywhere.

7. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any similar governing document.

10. "Hostile fire" means one that becomes uncontrollable or breaks out from where it was intended to be.

11. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement,

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

12. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business, other than a contract or agreement pertaining to the rental or lease of any "auto", (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

   g. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

Includes copyrighted material of ISO Properties, Inc., with its permission.

Paragraphs **f.** and **g.** do not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing. However, if such liability is insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, this Paragraph **(1)** shall not apply for such hazards for which insurance coverage is afforded by such "underlying insurance";

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet Services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks;

**(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above;

**(8)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(9)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

**b.** An offense that results in "personal and advertising injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

    **(1)** The frequency of repetition;

    **(2)** The number or kind of media used; or

    **(3)** The number of claimants.

**17.** "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** Abuse of process;

**d.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**e.** Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

Includes copyrighted material of ISO Properties, Inc., with its permission.

**f.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**g.** The use of another's advertising idea in your "advertisement";

**h.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**i.** Discrimination, unless insurance coverage therefor is prohibited by law or statute.

18. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include, but are not limited to, substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

19. "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the site has been completed, if your contract calls for work at more than one site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

20. "Property damage" means:

**a.** Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

21. "Subsidiary" means any organization in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by one or more of the Named Insureds.

22. "Suit" means a civil proceeding in which money damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such money damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such money damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

Includes copyrighted material of ISO Properties, Inc., with its permission.

23. "Temporary worker" means a person who is furnished to you to:

   a. Substitute for a permanent "employee" on leave; or

   b. Meet seasonal or short-term workload conditions.

24. "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise. "Ultimate net loss" does not include Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments** of this Coverage Part.

25. "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this Coverage Part covers.

26. "Underlying limit" means the total of the applicable limits of all "underlying insurance" less the amount, if any, by which the applicable limit of the applicable policy listed in the Schedule of Underlying Insurance has been reduced solely by payment of loss resulting from claims which are in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

27. "Workplace" means that place and during such hours to which the "employee" sustaining injury was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

28. "Your product":

   a. Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

**(2)** The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

29. "Your work":

   a. Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of ISO Properties, Inc., with its permission.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

**A. SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

1. Any liability:

   a. With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any liability resulting from the "hazardous properties" of "nuclear material", if

   a. The "nuclear material" **(1)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(2)** has been discharged or dispersed therefrom,

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   c. The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **c.** applies only to "property damage" to such "nuclear facility" and any property thereat.

**B. SECTION V - DEFINITIONS** is hereby modified to add the following definitions:

1. "Hazardous properties" include radioactive, toxic or explosive properties;

2. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

3. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

5. "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. "Nuclear facility" means:

   a. Any "nuclear reactor";

   b. Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", **(3)** or handling, processing or packaging "waste";

   c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear materials", if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of

Includes copyrighted material of ISO
Properties, Inc., with its permission.

plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations con-

ducted on such site and all premises used for such operations;

**7.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**8.** "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTANT EXCLUSION - OTHER THAN AUTO

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:   Subparagraph **1.**) is modified as follows:

**Exclusion 17. Pollutant - Other Than Auto** (Exclusion **1.q.** in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made) is hereby deleted and replaced by the following:

**Pollutant - Other Than Auto**

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

   **(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

   **(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   **(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

   Subparagraphs **a.(1)** and **a.(4)** do not apply:

   **(a)** To "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

   **(b)** If insurance is provided to the insured by "underlying insurance" specifically listed in the Schedule of Underlying Insurance at the "underlying limit" scheduled, but only to the extent "bodily injury" or "property damage" coverage is provided by that "underlying insurance" specifically listed in the Schedule of Underlying Insurance and subject to all its terms and conditions.

   **(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

   **(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

   However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**d.** Any liability caused by "pollutants" excluded by "underlying insurance".

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRODUCTS-COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SCHEDULE**

**Description of Premises and Operations:**

FOOD SERVICES

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in **SECTION V - DEFINITIONS** is replaced by the following:

> "Products-completed operations hazard":
>
> **a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

**US 3038 09 02**

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability arising out of the ownership, maintenance, occupancy, operation, use, "loading or unloading" of any "auto", unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance and then only for such hazards for which coverage is afforded by such "underlying insurance".

US 306 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to delete Exclusion **10. Electronic Data** in its entirety and replace it with the following:

This insurance does not apply to:

**10. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Any liability arising out of:

**a.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**b.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **a.** or **b.** above.

However, this exclusion does not apply:

**(1)** To damages because of "bodily injury", unless Paragraph **a.** above applies; and

**(2)** When such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIQUOR LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability for which any insured may be held liable by reason of:

**a.**   Causing or contributing to the intoxication of any person;

**b.**   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**c.**   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

If such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, this exclusion shall not apply for such hazards for which coverage is afforded by such "underlying insurance".

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability arising out of the ownership, maintenance, occupancy, operation, use, "loading or unloading" of any land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law, unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFIT LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

This policy is modified to add the following:

I.  **SECTION I - COVERAGE, A. Insuring Agreement(s)** is modified to add the following:

**EMPLOYEE BENEFIT LIABILITY:**

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages because of any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the administration of the insured's employee benefit programs.

This insurance applies only to negligent acts, errors or omissions:

a.  Whose damages are in excess of the "underlying insurance" provided by an Employee Benefit Liability policy listed in the Schedule of Underlying Insurance; and

b.  Which occur during the policy period.

II.  **SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following exclusion:

This insurance does not apply to:

Any liability arising out of employee benefit programs unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance".

**US 407 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION - IV CONDITIONS** is amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**US 4098 04 10**

## PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss.  These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

**1.**   surveys;

**2.**   consultation or advice; or

**3.**   inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

**1.**   if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

**2.**   to consultation services required to be performed under a written service contract not related to a policy of insurance; or

**3.**   if any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

US 450 PA 01 96

# THE CINCINNATI CASUALTY COMPANY
A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: ECP 049 60 04          Effective Date 07-19-2018

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

Retroactive Date:   07-19-2018

## Limits of Insurance and Deductible

| Insuring Agreement | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|
| **A**   Response Expenses | $50,000 | | | $1,000 |
| | | Forensic IT Review | $25,000 | |
| | | Legal Review | $25,000 | |
| | | PR Services | $25,000 | |
| **B**   Defense and Liability | $50,000 | | | $1,000 |
| | | Regulatory Fines and Penalties | $25,000 | |
| | | PCI Fines and Penalties | $25,000 | |
| **C**   Identity Recovery | $25,000 | | | $250 |
| | | Lost Wages and Child and Elder Care | $5,000 | |
| | | Mental Health Counseling | $1,000 | |
| | | Miscellaneous Unnamed Costs | $1,000 | |

| **TOTAL ANNUAL PREMIUM** | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

HC102      01/18 CINCINNATI DATA DEFENDER™ COVERAGE FORM

HC429PA    03/16 PENNSYLVANIA CHANGES

HC 502 01 18

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

**Coverage Part Provision:**  **Begins on Page:**

Preamble ........................................................................................................................................3

SECTION I - COVERAGES ..........................................................................................................3

A. Insuring Agreements .................................................................................................................3

    1. Insuring Agreement A - Response Expenses ......................................................................3
    2. Insuring Agreement B - Defense and Liability ....................................................................5
    3. Insuring Agreement C - Identity Recovery ..........................................................................5

B. Exclusions ...............................................................................................................................5

    1. Applicable to Insuring Agreements A and B .......................................................................5

        a. Contractual Liability .....................................................................................................5
        b. Criminal Investigations or Proceedings .......................................................................5
        c. Deficiency Correction ..................................................................................................5
        d. Extortion .....................................................................................................................6
        e. Fraudulent, Dishonest or Criminal Acts ......................................................................6
        f. Non-monetary Relief ...................................................................................................6
        g. Previously Reported Data Compromises ......................................................................6
        h. Prior Data Compromises .............................................................................................6
        i. Prior or Pending Litigation ..........................................................................................6
        j. Reckless Disregard .....................................................................................................6
        k. Uninsurable ................................................................................................................6
        l. Willful Complicity .........................................................................................................6

    2. Applicable to Insuring Agreement C ...................................................................................6

        a. Fraudulent, Dishonest or Criminal Acts ......................................................................6
        b. Professional or Business Identity ................................................................................6
        c. Unreported Identity Theft ............................................................................................6

    3. Applicable to Insuring Agreements A, B and C ...................................................................6

        a. Nuclear .......................................................................................................................6
        b. War ............................................................................................................................6

SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE .........................................................7

SECTION III - DEFENSE AND SETTLEMENT .............................................................................8

SECTION IV - CONDITIONS ........................................................................................................8

    1. Bankruptcy .......................................................................................................................8
    2. Due Diligence ...................................................................................................................8
    3. Duties in the Event of a Claim, Regulatory Proceeding or Loss .........................................9
    4. Help Line .........................................................................................................................10
    5. Legal Action Against Us ...................................................................................................10
    6. Legal Advice ....................................................................................................................10
    7. Liberalization ...................................................................................................................10
    8. Office of Foreign Assets Control (OFAC) Compliance .......................................................11
    9. Other Insurance ...............................................................................................................11
    10. Pre-Notification Consultation ..........................................................................................11
    11. Representations ..............................................................................................................11
    12. Separation of Insureds ...................................................................................................11
    13. Service Providers ...........................................................................................................11
    14. Services .........................................................................................................................11
    15. Subrogation ...................................................................................................................12
    16. Valuation - Settlement ....................................................................................................12
    17. When We Do Not Renew .................................................................................................12

Includes copyrighted material of Insurance<br>Services Office, Inc. with its permission.